# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | Criminal Case No. 3:07cr00031-5 |
| | ) | |
| v. | ) | **2255 MEMORANDUM OPINION** |
| | ) | |
| **LLOYD PRESTON KNIGHT.** | ) | By: Norman K. Moon |
| | ) | United States District Judge |

Petitioner Lloyd Preston Knight, a federal inmate proceeding *pro se*, filed this motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255, challenging the validity of his guilty plea and his 121-month sentence for conspiring to distribute methamphetamine. Knight alleges that his plea was not knowing and voluntary, that counsel provided ineffective assistance on two grounds, that the evidence was insufficient to support his conviction, that his indictment was flawed, and that the court erred in applying the sentencing guidelines. The United States has filed a motion to dismiss. I find that Knight's plea was knowing and voluntary, that his court error claim is defaulted, that one of his ineffective assistance of counsel claims fails on its merits, and that his remaining claims were waived in his plea agreement. Accordingly, I will grant the government's motion to dismiss.

**I.**

On November 14, 2007, Knight was named in a nine-member, six-count indictment handed down by a federal grand jury sitting in Charlottesville, Virginia. Knight was charged in Counts One and Six. Count One alleged that Knight conspired to manufacture, distribute, or possess with the intent to distribute five hundred grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 846. Count Six alleged that Knight possessed a mixture or substance containing a detectable amount of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841.

On December 3, 2007, Knight appeared before Magistrate Judge B. Waugh Crigler for arraignment. Knight admitted to his identity, but he refused to give a definitive answer when asked several times whether he understood the proceedings. Judge Crigler ordered the U.S. Marshal Service to take Knight back to the holding cell. Five minutes later, Knight was brought back before Judge Crigler, advised of court procedures and the pending charges, appointed counsel, and held without bond.

On December 19, 2007, Knight was named in a superseding indictment handed down by a federal grand jury sitting in Charlottesville, Virginia. Knight was identically charged in Counts One and Six as noted above. There were no additional counts attributed to Knight in the superseding indictment. That same day, before Judge Crigler, Knight waived his right to the services of appointed counsel for the purposes of re-arraignment, exercising his right to represent himself, and Knight was re-arraigned on Counts One and Six. Knight waived the reading of the indictment and pled not guilty to all charges. Trial was set for January 28-30, 2008.

On January 18, 2008, defense counsel filed a motion for a continuance of trial from January 28-30, 2008 to March 12-13, 2008, stating as the basis for his motion that plea negotiations were on-going and the defense needed more time to prepare. The United States did not object to defense counsel's request and I granted the motion for continuance, noting that failure to grant such a continuance would deny counsel for the defendant and the attorney for the government reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

On March 10, 2008, the United States filed a Notice of Intention to Call Expert Witnesses in the laboratory identification of controlled substances. A summary of the expert witnesses'

testimony in the form of lab certificates was previously made available to Knight in accordance with Federal Rule of Criminal Procedure 16(a)(1)(D).

On March 10, 2008, upon motion of defense counsel, I ordered Knight into the custody of the Bureau of Prisons ("BOP"), for a period not to exceed thirty days, for the purposes of a psychological or psychiatric examination. I also continued the trial scheduled for March 12-13, 2008, until after Knight's competency could be assessed. On April 17, 2008, upon motion of the BOP, I ordered the evaluation period to be extended fifteen days in order to complete the extensive psychological testing required.

On June 3, 2008, the forensic evaluation of Knight's psychological and psychiatric condition was filed with the court, concluding that Knight was suffering from a mental disease or defect, but that, in spite of this mental disease or defect, Knight was able to understand the nature and consequences of the proceedings against him and to assist properly in his defense. Knight was assessed as competent to proceed. On June 6, 2008, the court notified the parties that both a competency hearing and the jury trial were scheduled to begin on July 8, 2008.

On June 27, 2008, defense counsel filed a motion for continuance of trial from July 8, 2008 to August 4, 2008, stating the need for the outcome of the competency hearing prior to proceeding to trial. The United States did not object to this request and I granted the motion.

On July 8, 2008, I held a competency hearing. Knight was present with counsel. The United States moved to admit the competency report without objection from Knight. I found Knight competent and set a trial date of August 4, 2008. On July 14, 2008, I entered a competency order stating that Knight possessed adequate factual and rational understanding of the proceedings against him and was able to assist his attorney in his defense.

On August 4, 2008, a thirteen-page plea agreement was filed with the court pursuant to Rule 11 of the Federal Rules of Criminal Procedure, and was fully endorsed by Knight, his counsel, and the Assistant United States Attorney. Pursuant to the plea agreement, Knight pled guilty to a lesser-included charge contained in Count One of the Indictment, specifically, conspiring to distribute fifty or more grams of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 846. Under the terms of the plea agreement, the United States agreed, *inter alia*, to move for dismissal of the remaining count against Knight, to recommend a reduction in Knight's offense level for acceptance of responsibility, and to recommend a sentence of incarceration between the low end and the middle of the applicable guideline range. In exchange for these concessions, Knight waived, *inter alia*, his rights to appeal "whatever sentence is imposed on any ground" and to collaterally attack the judgment and any part of the sentence imposed upon him by the court. The plea agreement also advised Knight that the minimum penalty for the offense to which he was pleading was five years of incarceration and the maximum penalty was a fine of $2,000,000 and forty years imprisonment, followed by a period of supervised release.

Knight initialed every page of the plea agreement, including the page containing the waivers of his rights to appeal and collaterally attack the judgment and his sentence. By signing the plea agreement, Knight affirmed that he had read the plea agreement, that he had carefully reviewed every part of the agreement with his attorney, that he understood the agreement, and that he voluntarily agreed to its terms.

On August 4, 2008, I also conducted Knight's plea hearing. During the hearing, Knight stated under oath that he could read and understand English and that he could understand what was going on and could make decisions. I found that Knight was competent to plead.

I also established that Knight was aware of the nature of the charges against him, that he understood the range of punishment that he faced, that he understood how the United States Sentencing Guidelines might apply in his case, and that he knew that he had the right to a jury trial. I further established that Knight was aware that he would be bound by his plea agreement, even if his sentence was more severe than he expected.

I instructed the Assistant United States Attorney to review the salient portions of the plea agreement that Knight had reached with the United States. I asked Knight if the agreement described in court was different than the way he understood the agreement to be, to which Knight responded, "[n]o, sir." Knight affirmed that he read and understood the plea agreement before he signed it, and that no one had made any promises or induced him to plead guilty.

After all of my questions and statements, Knight pled guilty to the conspiracy charge. I ultimately accepted Knight's plea and found that it was a "knowing and voluntarily plea supported by an independent basis in fact containing each of the essential elements of the offense." Knight endorsed a guilty plea acknowledgment form in open court stating that counsel had fully explained the charges contained in the indictment before Knight was called upon to plead, that he had been advised of maximum punishment, and that his plea was knowing and voluntary, without threat or promise other than those disclosed in open court.

On November 3, 2008, I conducted Knight's sentencing hearing. Knight was present with counsel. The United States placed Knight's pre-sentence investigation report ("PSR") into evidence and defense counsel objected to the drug weight and purity calculations contained in the PSR.[1] I sentenced Knight to 121 months incarceration. Thereafter, defense counsel again

---

[1] Specifically, counsel objected to the PSR's calculation of Knight's base offense level using "ice" methamphetamine. "Ice" is a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity. *See* U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n. (C). Counsel argued that the substance should be calculated under methamphetamine mixture and not "ice" methamphetamine.

raised an argument over the drug weight and purity calculations. Ultimately, I suspended the imposition of judgment to allow for further evidence on the drug weight and purity issues.

On January 26, 2009, I heard evidence in order to conclude the sentencing of Knight. Special Agent Scott Fairburn with the Bureau of Alcohol, Tobacco, Firearms and Explosives and Tammy Wellborn with the United States Probation Office testified to clarify (1) drug weight and purity calculations, (2) the admissions by Knight to law enforcement that he was dealing in "ice" rather than in "meth," and (3) the results of the lab tests. I concluded that the sentencing guidelines had been calculated properly and thereafter imposed the sentence outlined at the November 3, 2008 sentencing hearing.

On February 4, 2009, Knight, by counsel, appealed the final judgment. Appellate counsel, appointed by the Court of Appeals, filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). On May 27, 2010, the Court of Appeals affirmed Knight's sentence and stated that its "review of Knight's presentence report and the sentencing transcript leads us to conclude the district court properly calculated Knight's advisory guidelines range and committed no plain procedural error in sentencing."

In his § 2255 motion, Knight alleges that his plea was not knowing and voluntary, that counsel provided ineffective assistance in failing to prepare for trial, that the evidence was insufficient to support his conviction, that he received inadequate notice of the nature of his offense and the penalty he faced due to an "improper indictment," that the district court erred in accepting and applying the sentencing guidelines, and that counsel provided ineffective assistance in allowing the government to withhold a substantial assistance motion. For the reasons stated herein, I will grant the government's motion to dismiss.

**II.**

Knight alleges that his plea was not knowingly and voluntarily made. However, this claim contrasts sharply with the statements Knight made during his plea colloquy when he affirmed to the court that his plea was both knowing and voluntary. Upon consideration of Knight's claim, I find that his plea was entered both knowingly and voluntarily, and therefore, I will dismiss this claim.

"[A] defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity,' because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); and citing *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003)). Because the declarations carry such a presumption, they present a formidable barrier in any subsequent collateral proceedings. *United States v. White*, 366 F.3d 291, 295-96 (4th Cir. 2004) (quoting *Blackledge*, 431 U.S. at 74).

During his plea hearing, Knight affirmed that he completely understood the terms of the plea agreement including the appeal and collateral attack waivers, that he was entering the plea and waiving his appeal rights knowingly and voluntarily, that he was completely and fully satisfied with his attorney's representation, and that he did not challenge the government's evidence against him.[2] I took care to ensure that Knight entered his plea both knowingly and

---

[2] To the extent that Knight now argues that counsel induced him to plead guilty by giving unsound advice, his claim fails. First, as previously discussed, Knight's claim is contradicted by the record where Knight stated under oath that no one had induced him to plead guilty. Second, neither of the allegations which Knight claims his attorney used to induce or mislead him to plead guilty demonstrate both deficient performance and resulting prejudice as required by *Strickland v. Washington*, 466 U.S. 668 (1984).

Knight alleges that counsel induced him to plead guilty by telling him that if he did not plead guilty, "he could very well receive a sentence of 'life' in prison" if he went to trial. On Count One, Knight faced a mandatory minimum sentence of 5 years and a maximum sentence of 40 years. However, if the United States had filed a sentencing information pursuant to 21 U.S.C. § 851, based on Knight's previous conviction for conspiring to

7

voluntarily by reviewing the provisions until I was fully satisfied that Knight understood. I made findings on the record at the plea hearing that Knight was competent to plead and that he voluntarily and knowingly entered his plea. These findings were not mere formalities but rather reflected my considered opinion that Knight was in fact fully competent and that his plea was knowing and voluntary. Nothing that has followed has dispelled that conclusion. Accordingly, I find that Knight's challenge to the validity of his plea has no merit and, therefore, I will dismiss his claim.[3]

### III.

Knight also alleges that counsel provided ineffective assistance in failing to prepare for trial, that the evidence was insufficient to support his conviction, and that he received inadequate notice of the nature of the offense for which he was charged and the penalty he faced due to a "improper" indictment. However, Knight knowingly and voluntarily waived his right to

---

manufacture methamphetamine, Knight would have been subject to a mandatory minimum of 20 years and a maximum of life imprisonment. Therefore, even assuming that counsel did advise Knight that he "could very well" receive a life sentence if he went to trial, I do not find that this advice is so unreasonable to constitute deficient performance.

Knight also alleges that counsel misled him into pleading guilty by failing to tell him that he would be sentenced based on methamphetamine "ice" instead of just methamphetamine. To the extent that Knight claims that he would not have pled guilty and would have insisted on going to trial if he had known that he would be sentenced based on ice, I find it incredible that a reasonable defendant in Knight's circumstances would have done so given Knight's statements during his plea hearing, the substantial benefits he received from his plea agreement, and the fact that the drug purity would have been the same regardless of whether Knight pled guilty or went to trial. Further, my finding that Knight was responsible for ice was not only based on actual lab results, but also on Knight's own statements to law enforcement officers concerning his involvement with ice. At his plea hearing, Knight affirmed that he was aware of the nature of the charges against him, and that the understood how the Guidelines might apply in his case. By pleading guilty, Knight received the benefit of a 3-point reduction for acceptance of responsibility, dismissal of Count 6 against him, and a recommendation to the low end to middle of the guideline range by the United States. Finally, even if Knight had rejected the plea offer and continued to trial, he would still have been sentenced based upon ice calculations. Accordingly, I find it incredible that a reasonable defendant in Knight's position would have rejected his plea and pursued a trial had counsel advised him that he would be sentenced on ice calculations. Therefore, I further find that Knight has not demonstrated prejudice as a result of counsel's allegedly deficient performance.

[3] Further, on direct appeal, the Court of Appeals determined that the district court complied with the mandates of Federal Rule of Criminal Procedure 11 in accepting Knight's guilty plea, ensuring that the Knight entered his plea knowingly and voluntarily and that the plea was supported by an independent factual basis.

collaterally attack his plea and sentence and these claims fall within the scope of that waiver. Therefore, I will dismiss these claims.

It is settled circuit law that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). Waivers of collateral review are analyzed under a two-part analysis in which both the validity and the scope of the waiver are considered. *See, e.g., United States v. Attar*, 38 F.3d 727, 731-33 (4th Cir. 1994) (holding that a waiver will be enforced if the record establishes that the waiver is valid and that the issue being appealed is within the scope of the waiver). The validity of a waiver "depends on whether the defendant knowingly and intelligently agreed to waive the right." *Id.* at 731-32. "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Lemaster*, 403 F.3d at 221-22; *see also United States v. Brown*, 232 F.3d 399, 405-06 (4th Cir. 2000) (holding that a defendant's statements during the plea colloquy and evidence that he discussed the terms of the waiver provision with counsel and fully understood them provide powerful evidence that the waiver is valid). If the court determines that a petitioner's allegations, viewed against the record of the Rule 11 plea hearing, are so "palpably incredible, so patently frivolous or false as to warrant summary dismissal," the court may dismiss the § 2255 motion without a hearing. *Lemaster*, 403 F.3d at 220 (internal quotations and citations omitted). Although the validity determination is often made based on the "adequacy of the plea colloquy–specifically, whether the district court questioned the defendant about the . . . waiver–the issue ultimately is 'evaluated by reference to the totality of the circumstances.'" *United States v. Blick*, 408 F.3d 162, 169 (4th

Cir. 2005) (quoting *United States v. General*, 278 F.3d 389, 400 (4th Cir. 2002)). Thus, the determination "'must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" *Id.* (quoting *United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992)).

That does not end the inquiry, however. The court must also consider the scope of the plea agreement waiver: that is, whether it prevents the court from considering the particular claims the defendant asserts in his § 2255 motion. The United States Court of Appeals for the Fourth Circuit has distinguished a narrow class of claims that fall outside the scope of an enforceable waiver of direct appeal and § 2255 rights. Issues that a defendant could not reasonably have foreseen when entering into a plea agreement, such as the denial of counsel at any stage of the proceedings following the entry of the plea, the imposition of a sentence above the statutory maximum, or the imposition of a sentence based on a constitutionally impermissible factor such as race, fall outside the scope of the waiver.[4] *Attar*, 38 F.3d at 732; *Lemaster*, 403 F.3d at 220 n.2; *United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992); *Blick*, 408 F.3d at 169-71. Thus, in addition to evaluating the validity of Knight's guilty plea and waiver of collateral attack rights, I must determine whether his claims fall within the scope of that waiver.

I already found that Knight's plea was valid and further find that his waiver of collateral attack right is also valid. Therefore, I must now determine whether Knight's claims are included within the scope of the waiver. Knight's claims concerning counsel's alleged failure to prepare for trial, the sufficiency of the evidence, and the "improper" indictment do not allege a complete denial of counsel at any stage of the proceedings following the entry of the plea, the imposition

---

[4] In the Supreme Court's recent decisions in *Missouri v. Frye*, 132 S.Ct. 1399 (2012) and *Lafler v. Cooper*, 132 S.Ct. 1376 (2012), the Court held that a defendant is entitled to the effective assistance of counsel as it relates to plea offers that lapse or are rejected. It is unclear whether such a claim would be within the scope of a valid collateral attack waiver. However, I need not make that determination in this case, because there is no evidence that the United States offered a plea to Knight that either lapsed or was rejected.

of a sentence above the statutory maximum, or the imposition of a sentence based on a constitutionally impermissible factor. Therefore, I find that Knight's claims fall within the scope of his collateral attack waiver and, thus, these claims are not cognizable claims in a § 2255 motion. Accordingly, I will dismiss these claims.

IV.

Knight also alleges that the court erred in accepting and applying the sentencing guidelines. However, the United States Court of Appeals already decided this issue on direct appeal. Therefore, I find that this claim is not cognizable on federal habeas review and will dismiss it.

A federal habeas petitioner ordinarily cannot relitigate issues that have already been decided on direct review. *Withrow v. Williams*, 507 U.S. 680, 720-21 (1993); *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) (claims fully considered on direct appeal cannot be reconsidered on collateral attack); *Herman v. United States*, 227 F.2d 332 (4th Cir. 1955) (§ 2255 motion may not raise questions that were fully considered on appeal). Because Knight raised his sentencing guidelines claim on direct appeal, and the Court of Appeals rejected it, I will dismiss it on habeas review.

V.

Knight alleges that counsel provided ineffective assistance in "allowing" the government to withhold a substantial assistance motion. I find that Knight has not demonstrated that counsel's performance was deficient and, therefore, I will dismiss this claim.

To establish a claim of ineffective assistance of counsel, petitioner must show that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's alleged deficient performance. *Strickland v. Washington*, 466 U.S. 668,

669 (1984); *see also Williams v. Taylor*, 529 U.S. 362 (2000). Courts apply a strong presumption that counsel's performance was within the range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *see also Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Hutchins v. Garrison*, 724 F.2d 1425, 1430-31 (4th Cir. 1983); *Marzullo v. Maryland*, 561 F.2d 540 (4th Cir. 1977). In addition to proving deficient performance, a petitioner asserting ineffective assistance must prove that he suffered prejudice as a result of his counsel's deficient performance; that is, petitioner must show there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. The petitioner "bears the burden of proving *Strickland* prejudice." *Fields*, 956 F.2d at 1297 (citing *Hutchins*, 724 F.2d at 1430-31). If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." *Fields*, 956 F.2d at 1290 (citing *Strickland*, 466 U.S. at 697). A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. *Strickland*, 466 U.S. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted); *see also Bowie v. Branker*, 512 F.3d 112, 119 n.8 (4th Cir. 2008); *Fields*, 956 F.2d at 1297-99; *Roach v. Martin*, 757 F.2d 1463, 1467 (4th Cir. 1985). In this case, Knight has not demonstrated ineffective assistance of counsel.

United States Sentencing Guidelines, Section 5K1.1 allows "upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the

guidelines." Under 18 U.S.C. § 3553(e), "substantial assistance in the investigation or prosecution of another person who has committed an offense may justify a sentence below the statutorily required minimum sentence."

Pursuant to the written plea agreement between Knight and the government, the parties agreed that Knight would be given the opportunity to provide substantial assistance. Knight also acknowledged that at the time of signing his plea agreement, no one had promised him that a substantial assistance motion would be made on his behalf and that he understood that the determination as to whether or not his efforts constituted substantial assistance would be "solely" within the discretion of the United States Attorney's Office.

The record is clear that the United States did not move for reduction of Knight's sentence based on substantial assistance provided. The record is also clear that Knight was clearly informed that the decision as to whether to file a substantial assistance motion rested solely with the United States. Inasmuch as counsel had no control over whether the United States filed a substantial assistance motion, I find that Knight has not demonstrated that counsel's performance was constitutionally deficient. Accordingly, I will dismiss this claim.

## VI.

For the reasons stated herein, I will grant the government's motion to dismiss.

**ENTER**: This 30th day of November, 2012.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE